THE HON. HENRY C. SMITH,
THE HON. WILLIAM L. HOLLOWAY, } Associate Justices.

---

KELLY, RESPONDENT, *v.* GRANITE BI-METALLIC CON. MINING CO. ET AL., APPELLANTS.

(No. 2,710.)

(Submitted March 14, 1910. Decided March 26, 1910.)

[108 Pac. 785.]

*Water and Water Rights—Stored Waters—Findings—Equity Cases—Review—Briefs—Failure to Point Out Evidence—Effect.*

Equity—Findings—Review.
 1. The findings of the district court in an equity case, attacked on the ground of the insufficiency of the evidence to support them, will not be disturbed by the supreme court unless the evidence clearly preponderates against them.

Appeal—Briefs—Failure to Point Out Evidence—Presumptions.
 2. Where the brief of appellant fails to point out evidence in support of his contention relative to a given subject, the supreme court will not search the record to find it, but indulge the presumption that there was no evidence on the point.

41 Mont.—1 (1),

Waters and Water Rights—Stored Waters—Rights of Owners.

3. So long as water to the amount to which ditch owners are entitled is allowed to flow to the headgates of their ditches, they may not complain of the use of the water by others above them, whether they divert it from the sources of the stream or from water stored by them in a reservoir.

*Appeal from District Court, Granite County; Geo. B. Winston, Judge.*

ACTION by Sidney A. Kelly against Annie M. Hynes and others. There was a decree in favor of plaintiff, and defendants, Annie M. Hynes, Thomas F. Hynes, and R. R. McLeod and the defendants Granite Bi-Metallic Consolidated Mining Company and Fred Burr & Granite Ditch Company appeal. Modified and affirmed.

*Messrs. Word & Word* and *Mr. W. E. Moore* submitted a brief in behalf of Appellants. Oral argument by *Mr. Lee Word.*

In behalf of Defendants Hynes and McLeod, there was a brief by *Messrs. Rodgers & Rodgers,* and oral argument by *Mr. W. E. Rodgers.*

*Mr. Wingfield L. Brown* filed a brief in behalf of Respondent Kelly, and argued the cause orally.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This action was brought to determine the rights of the plaintiff and the defendants Hynes and wife and McLeod to the use of the water flowing in Fred Burr creek, in Granite county, and to adjust the relative priorities and amounts of their respective appropriations. As indicated by the annexed outline

map, the stream has its sources on the west slope of the mountains, and flows into the valley toward the northwest.

At some distance below the junction of its three principal branches are situated agricultural lands, owned and occupied by the plaintiff and the defendants Hynes and McLeod. To irrigate these lands they have ditches, diverting water from the main stream near where it debouches into the valley. The Hynes ditch with its laterals is nearest to the mountains; those of the plaintiff and defendant McLeod are a short distance below, the latter being farthest down. When the action was originally instituted, it presented a controversy solely between the plaintiff and Hynes and wife; the allegations of the complaint being that these defendants at the time were diverting water to the use of which plaintiff was entitled by priority of appropriation, thus doing him irreparable injury. McLeod was made a defendant ostensibly because he was and is entitled to the joint use with plaintiff of the oldest right upon the stream, both holding under direct or mesne conveyances from a common predecessor, and because he was and is the owner of other rights based upon appropriations of later dates. Upon a *prima facie* showing made by Hynes and McLeod that the defendants Granite Bi-Metallic Consolidated Mining Company and the Fred Burr & Granite Ditch Company, hereinafter referred to

as the mining company and the water company, were causing the interference complained of by the plaintiff, and were in any event necessary parties to the action in order to determine all the conflicting rights, they were made parties defendant. The principal issues tried and determined arose upon the claim of right by the companies to maintain dams at the outlets of the lakes designated on the map as the Upper and Lower Fred Burr lakes, the apparent sources of the north branch of the stream, for storage of flood waters, and incidentally to divert into the upper lake, by means of a pipe-line, a portion of the water flowing in the middle fork of the stream, and to convey the water thus obtained by means of a flume to the town of Granite to supply its inhabitants, and also the mining and reduction works of the mining company at Granite and at the mill on Douglas creek below. Involved in this controversy was also the right, asserted by the companies, to increase their supply by diverting into the flume, by means of intakes, the water of small streams and springs issuing from the slope of the mountain above the line of the flume between the lakes and the town. The contention of the plaintiff and the other defendants was that the companies by these various devices seriously interfered with the natural flow of the stream, and thus deprived them of the amount of water to which they were entitled under their respective appropriations.

The mining company based its claim of a prior right to the use of the water, for the purpose for which it and its associate water company were diverting it, mainly upon three different appropriations; the first, made by one Degenhart, of 150 inches, in March, 1876; a second, made by one Owens, of 200 inches, in July, 1879; and a third, of 500 inches, made by one John McLeod, in 1886. In 1888 the Granite Mountain Mining Company, the immediate predecessor of the defendant mining company, acquired by mesne conveyances a one-half interest in the Degenhart right, and the entire interests of the owners of the other two. At that time these rights were appurtenant to, and were used to irrigate, the lands now owned

by the plaintiff. These lands were also acquired by the Granite Mountain Mining Company at the same time it acquired the water rights referred to. This company and the water company then began to divert water at the outlet of the Lower Fred Burr Lake. In the year 1889 they constructed a dam across the outlet of this lake, and thereafter conveyed water by means of the flume indicated on the map to the town of Granite, and to the reduction works of the Granite Mountain Mining Company. They also supplied the Bi-Metallic mill, then owned by an associated corporation known as the Bi-Metallic Mining Company. None of the water which was so diverted to the town of Granite or the works of the Granite Mountain Mining Company ever returned to Fred Burr creek, but such of it as escaped as waste or surplus flowed into Douglas creek. This condition continued until this company was succeeded by the mining company in 1898, which then became the owner of all of its property, as well as that of the Bi-Metallic Mining Company, with which it was then consolidated. In addition to the rights thus acquired, the Granite Mountain Mining Company and the water company also made various other appropriations in different amounts, ranging in date from April 11, 1887, to February 11, 1890, at points on tributaries of the stream, in the neighborhood of the lakes. This company also made appropriations on March 6, 1886, and on February 11, 1890, to supply water to its mill at Rumsey. The appropriation of the water to be conveyed by the pipe-line was made by the water company in January, 1902, and the line was completed during that year. The amount thus conveyed is between six and seven inches. In 1889, and in the following years, the companies also increased the height of the dam at the outlet of the lower lake, and erected another at the outlet of the upper lake, for the purpose of storing flood waters, in order to increase the supply and render it uniform. The water claimed under these later appropriations was diverted, either through the pipe-line into the upper lake, or through the intakes into the flume. On November 30, 1903, the defendant

mining company by deed conveyed to the plaintiff all its right, title and interest in the lands heretofore mentioned and now owned by him, together with its interest in the Degenhart, Owens and John McLeod water rights, reserving, however, and excluding from the grant, certain privileges in connection with the water rights, which are described as follows: "All the water of said Fred Burr creek which is tributary to Fred Burr lake, and all the water of said Fred Burr creek or Fred Burr lake which may have been at any time a portion of or part of said water rights herein mentioned, and which has been used or appropriated, or may be used or appropriated for any use whatever by the Fred Burr & Granite Ditch Company or its predecessors, which are tributary to said Fred Burr lake. * * * " The relationship which the mining and water companies sustain toward each other does not distinctly appear. What this relation is exactly is not important; for though they answered separately, and in the findings and decree are awarded separate rights under the appropriations made by the water company and the Granite Mountain Mining Company, the predecessor of the mining company, they claim the right to the joint use of the water diverted from the lakes by means of the flume and the intakes used in connection therewith, and were treated as joint owners by the court in its findings. It is sufficient to say that the water company is a subsidiary corporation, organized to supply the inhabitants of Granite and the employees of the mining company with water, as well as the mining company in its mining and reduction operations.

The plaintiff bases his claim upon a one-half undivided interest in the Degenhart right and in the Owens and John McLeod rights, conveyed to him by the defendant mining company. He avers that his right is superior to that of any of the other parties plaintiff and defendant, except that defendant McLeod has a joint interest with him in the Degenhart right, equal in dignity with his own right therein. McLeod bases his claim upon this half interest acquired by him in the Degenhart right through mesne conveyances from the original

appropriator, a second appropriation, alleged to have been made by a predecessor, of 300 inches, in 1882, and a third, made by the same predecessor, of 200 inches, in April, 1888. The defendants Hynes base their claim upon an appropriation of 200 inches, which is alleged to have been made in 1882 by a predecessor from whom they acquired the lands they now occupy, with the appurtenant water right. The plaintiff and defendants severally assert, as against each other, right to the amounts claimed by them, respectively, by adverse use for the period prescribed by the statute of limitations.

Upon the evidence the court made special findings as to the dates and amounts of the respective appropriations of the parties, and entered a decree fixing the relative rights and priorities, and enjoining each of them from interfering with the rights of any of the others. It found that no one of them had acquired a right by adverse user. It awarded to the plaintiff 75 inches under the Degenhart appropriation, as of the date of March 6, 1876; 100 inches under the Owens appropriation, as of the date of July 6, 1879; and 100 inches under the John McLeod appropriation, as of the date of December 4, 1886. To McLeod it awarded 75 inches under the Degenhart appropriation, 75 inches as of the date of December 1, 1882, and 150 inches as of the date of April 1, 1888. To the defendants Hynes it awarded 75 inches, as of the date of June 1, 1883. These rights amount in the aggregate to 650 inches. It found for the companies as to all the rights claimed by them by appropriation, except 'one of 2,000 inches of the water of Fred Burr lake, alleged to have been made on April 11, 1887, and certain ones which are alleged to have been made to supply the mill at Rumsey. As to these it made no specific findings. As to the right of the defendant companies to maintain their dams at the lakes and divert water therefrom, the court found as follows:

"Finding No. 15. That the average amount of water flowing in said Fred Burr creek below the dams constructed across said Fred Burr lakes by the said Fred Burr & Granite Ditch

Company and the said Granite Bi-Metallic Consolidated Mining Company, and hereinafter in these findings mentioned, each year, prior to and since the construction of said dams, has been not less than 650 inches of water."

"Finding No. 20.   That during the irrigating season of each and every year since said dams were constructed by the said defendant companies, they have allowed and permitted to flow in said creek and out of said lakes, into and down the natural channel of said Fred Burr creek, not less than 650 inches of water.

"Finding No. 21.   That the said defendants the Fred Burr & Granite Ditch Company and the said Granite Bi-Metallic Consolidated Mining Company have not during the irrigating season, since the construction of said dams, detained or deprived the plaintiff or either of said defendants Annie K. Hynes, Thomas F. Hynes, or R. R. McLeod, of the ordinary and natural flow or discharge of the waters of said Fred Burr creek as the same would naturally flow and run at such times.

"Finding No. 22.   That the defendants the Fred Burr & Granite Bi-Metallic Consolidated Mining Company are the owners of and entitled to maintain and use, for the purpose of storing and conserving therein the waters of said Fred Burr creek and the said Fred Burr lakes, the said dams, and are entitled to store therein the waters of said creek and of said lakes, provided said defendant companies use the water in such a manner that every appropriator herein named, farther down the creek, shall have during the irrigating season of each year the use and enjoyment of said waters of said creek substantially according to its natural flow; and the said defendant companies at all times during the irrigating season of each year must turn down and permit to flow into the channel of said Fred Burr creek below said lakes, and below the said dams across said lakes, not less than 650 inches of water."

From the decree entered upon these findings and from an order denying their separate motions for a new trial, the defendant companies have appealed.

The only contention made is that the evidence is insufficient to justify the findings. Viewing them as a whole. we do not think the contention should be sustained. The evidence is voluminous, and, in some respects, in irreconcilable conflict. It would serve no useful purpose to enter into an analysis of it. We do not find that it clearly preponderates against any of the conclusions reached by the trial court, except in one particular hereafter noted, and, under the rule which must govern this court upon a review of the findings in such cases (*Bordeaux* v. *Bordeaux*, 32 Mont. 159, 80 Pac. 6; *Finlen* v. *Heinze*, 32 Mont. 354, 80 Pac. 918; *Pope* v. *Alexander*, 36 Mont. 82, 92 Pac. 203; *Watkins* v. *Watkins*, 39 Mont. 367, 102 Pac. 860), we do not feel justified in disregarding them or setting them aside.

One of the principal contentions made is that the court either misconstrued the deed from the mining company to the plaintiff of the lands now occupied by him and the appurtenant water rights, or that it disregarded it. Under the evidence, as we understand it, the question whether the reservation is effective, or is void, as is urged by the plaintiff and the other defendants, because it is inconsistent with the grant of the principal thing described in the deed, is wholly immaterial. Prior to the time the Granite Mountain Mining Company acquired the Degenhart, Owens, and McLeod rights, it had been obtaining its supply of water from springs adjacent to its mines and works. As the work of mining progressed, the sources of these springs were drained, and they failed. Thereupon those rights were acquired, and the water company was organized as a subsidiary company to perfect devices for the diversion of water and for its sale to the inhabitants of the town, as well as to provide a supply to be used by the company in its mining and reduction operations. It was immediately found that, if the supply was to be made sufficient to meet these requirements, it would be necessary to increase it by conserving the flood waters flowing into the lakes, and also to gather together and make available the small streams and springs along the line of the

flume. For this purpose the dams were constructed and the intakes were installed. These devices were improved during the two or three years following immediately upon the acquisition of the rights now claimed by the plaintiff. Finally, in 1902, the pipe-line was installed. In the meantime the Granite Mountain Mining Company and its successor, the mining company, were leasing the lands now owned by the plaintiff, and never at any time was any complaint made that the supply in the main stream was not sufficient to meet all the requirements for agricultural purposes, either by these lessees or the defendants Hynes and McLeod or their predecessors. During all these years the defendant companies had a supply to meet all their wants, which they were diverting entirely away from the slope from which the stream is supplied, so that neither the surplus nor waste could return to it. Further, the evidence tends to show, as the court found, that never at any time did the diversion of water by the companies lessen the natural flow in the main stream at the heads of the ditches of the plaintiff and the other defendants. It also tends to show that at no time during the irrigating season, even prior to the building of the dams, did any appreciable amount flow from the lakes down to the main stream through its north fork, but that this branch was supplied mainly by affluents issuing out of the slopes below the dams and the flume of the companies. The only inference possible from this evidence is that the companies relied for their supply, not upon the rights acquired by the purchase from Degenhart and others, because they could not do so, but upon the independent supply acquired by the storage of flood waters, the conservation of other small sources, and the small diversion by means of the pipe-line. So far as appears, they would have been found entitled to exactly the same rights as were decreed to them—and these are all to which they appear to have any just claim—if the reservation in the deed had not been made. We cannot gather definitely from anything in the record what view the trial judge took of this deed, and what, if any, effect he gave to the reservation. As

we have said, however, it is apparent that the same conclusion
would have been reached by him, whatever may have been his
view.  We shall presume that he regarded it as not affecting
the rights of the defendant companies as shown by the other
evidence, and therefore shall not undertake to say whether the
reservation is void or not.

It is argued that the court erred in impliedly finding against
the companies as to the appropriation which is alleged to have
been made on April 11, 1887, and those made to supply the mill
at Rumsey.  The first of these appropriations was made at the
outlet of the lakes, for the purpose of securing the right to
divert the flood water of the lakes, as well as whatever out-
flow there might be after the flood season was over.  The flume
was completed in 1889.  It will be observed that the court
found that the companies have the right to maintain their
dams and divert water from the lakes, not confining them to
the flood water merely, but leaving them to divert any water
flowing therefrom; the only restriction imposed being that they
do not interfere with the flow of the water in the stream be-
low so as to decrease the flow below 650 inches.  The findings
award to these defendants all that they can justly claim under
this appropriation, though it is not expressly mentioned.

Counsel for the companies do not call attention, in their brief,
to any evidence which tends to show diligence in prosecuting the
work of diversion under the appropriations for use in the Rum-
sey mill, nor to any showing that water was ever put to any
actual use in the mill, or is now in use.  We cannot undertake
an independent examination of the large record in order to as-
certain what the evidence is.  In the absence of definite refer-
ence to it, we must presume that there was no evidence on the
subject.

In view of the evidence heretofore referred to, touching the
outflow from the lakes, we think the court was in error in finding
that the companies have always permitted as much as 650 inches
to flow over their dams.  In fact, the evidence tends to show al-
most conclusively that, except at flood seasons, this outflow is

almost nothing, and that the volume of the stream is maintained at the heads of the ditches of the plaintiff and the other defendants by tributaries flowing into it below the dams. So long as this condition exists, the companies are under no obligation to permit any flow from their reservoirs, whether it consists of the natural outflow or of the conserved flood water. Therefore, while findings 20 and 22 are correct in declaring the fact to be that the companies have not at any time interfered with the flow of the water below the dams, and are therefore entitled to maintain them, they are erroneous in requiring these defendants to permit the amount to which the ditch owners are entitled in the aggregate to flow over the dams. Under the evidence this is impossible unless the trial court is to be understood as holding that, while the dams may be lawfully maintained for storage purposes, the companies must nevertheless use the stored water to keep up the flow of the stream for the benefit of the ditch owners, before they are entitled to divert any to their own uses. The most that the ditch owners are entitled to claim at any time is that the amounts to which they are respectively entitled shall flow to the headgates of their ditches. (*Sayre* v. *Johnson,* 33 Mont. 15, 81 Pac. 389.) They are entitled to nothing more. And since it appears that the companies have not at any time lessened this amount, the ditch owners have no just ground for complaint so long as this condition is maintained, whether the companies divert water from the sources of the stream or confine their use to the stored water. Doubtless this was the theory entertained by the trial court; but, as the findings stand, the ditch owners have the right to demand the use of water which, but for the devices resorted to by the companies, would never under any condition be available for any purpose. If the findings are reformed to meet the conditions as they actually exist, the companies will have no ground to complain, and the ditch owners will have secured all the rights to which they are entitled.

The cause is therefore remanded to the district court, with direction to reform the findings, so as to require nothing further

from the companies than that they do not by their diversions decrease the amount of the flow at the heads of the plaintiff's and defendants' ditches below 650 inches. When the decree shall have been modified in accordance with this direction, it will stand affirmed.

*Modified and affirmed.*

MR. JUSTICE SMITH and MR. JUSTICE HOLLOWAY concur.

### ON MOTION FOR REHEARING.
(Submitted April 25, 1910. Decided May 2, 1910.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

. A motion for a rehearing has been submitted by appellants herein, the purpose of it being to obtain a construction of the deed referred to in the original opinion, and to have the order modifying the decree made more specific. After further consideration of the case we are of the opinion that a construction of the deed will not add anything to the rights of the appellants, as they will be fixed by the decree as already modified. The order heretofore made herein is, however, changed to read as follows: "The cause is therefore remanded to the district court, with directions to modify its findings in accordance with the suggestions herein, and to modify the decree accordingly, so as to require nothing further from the companies than that they do not by their diversions decrease the amount of the flow at the heads of the plaintiff's and defendants' ditches below 650 inches. When the decree shall have been modified in accordance with this direction, it will stand affirmed."

The motion for rehearing is denied.

*Rehearing denied.*

MR. JUSTICE SMITH and MR. JUSTICE HOLLOWAY concur.