BEN GWYNN, Plaintiff and Appellant, *v.* the CITY OF
PHILIPSBURG, Defendant and Respondent.

No. 11584.
Decided Dec. 16, 1970.
As Amended Jan. 7, 1971.
478 P.2d 855.

Knight, Dahood & Mackay, Anaconda, Wade Dahood, argued, Anaconda, for appellant.

Poore, McKenzie, Roth & Robischon, Butte, Allen R. McKenzie, argued, Butte, William F. Sheehan, County Atty., Philipsburg, for respondent.

MR. JUSTICE DALY delivered the Opinion of the Court.

This is a suit for an injunction by the holders of an adjudicated downstream water right against a city maintaining an upstream dam and storage reservoir. Plaintiffs seek to restrain the city from decreasing the amount of flow in the stream during the irrigating season at the head of plaintiffs' irrigation ditches. From an adverse judgment, denial of their motion for a new trial, and denial of their motion to amend the findings of fact and conclusions of law, plaintiffs appeal.

The sole issue upon appeal is the sufficiency of the evidence to support the findings of fact and judgment.

The background of the present litigation is long and extensive, but for the purposes of this opinion can be summarized. The water rights in the present litigation involve the waters of Fred Burr Creek in Granite county. Fred Burr Creek is a natural stream of running water with bed and banks, its source being in the mountains east and south of Philipsburg. The Fred Burr lakes, consisting of Upper Fred Burr Lake and Lower Fred Burr Lake, are located at or near the head of Fred Burr Creek with Upper Fred Burr Lake located upstream of Lower Fred Burr Lake. If not interfered with the waters of the two Fred Burr lakes and of streams and springs tributary thereto naturally flow into Fred Burr Creek.

In 1889 the predecessors in interest of defendant city constructed a dam across the outlet of Lower Fred Burr Lake and thereafter conveyed water out of it by means of a flume and none of the water ever returned to Fred Burr Creek. In the same year they also erected a dam at the outlet of Upper

Fred Burr Lake for the purpose of storing flood waters in order to increase the supply of water and render it uniform.

In the early 1900's one of the present plaintiffs' predecessors in interest commenced an action in the district court against the remainder of the present plaintiffs' predecessors in interest and against the present defendant's predecessors in interest to determine the rights of all parties to the use of the waters of Fred Burr Creek, and to adjust their relative priorities and amounts of their respective appropriations. That case was eventually appealed to this Court and final decision was rendered on rehearing on May 3, 1910. Kelly v. Hynes, 41 Mont. 1, 108 P. 785. The substance of the decision in *Kelly* was that the predecessors in interest of plaintiffs in the instant case were awarded 650 inches in Fred Burr Creek at the heads of their irrigation ditches and that the predecessors in interest of defendant in the instant case, while possessing the right to maintain the dams for storage purposes, do nothing by their diversions to decrease the amount of flow at the heads of the irrigating ditches below 650 inches.

Thereafter at an uncertain date prior to 1937 or 1938, defendant city of Philipsburg succeeded to the rights of its predecessors. It constructed a new replacement dam at the outlet of Upper Fred Burr Lake. A pipeline runs from Upper Fred Burr Lake into the city and supplies the inhabitants with water for domestic and other useful purposes. This is the main source of their water supply. Philipsburg has had complete control of the water in the Fred Burr lakes for about 30 years. Philipsburg has done nothing to repair or maintain the dam in Lower Fred Burr Lake and none of its water supply comes from this source.

Plaintiffs in the instant case own lands located some 7 miles downstream from the Fred Burr lakes. These lands located at or near Fred Burr Creek are arid requiring irrigation to produce crops. Plaintiffs and their predecessors used and maintained irrigation ditches running from Fred Burr Creek to their lands.

The focus of the present controversy is whether Philipsburg is presently interfering with adjudicated water rights now possessed by plaintiffs by virtue of the award to their predecessors in *Kelly*. Fundamentally plaintiffs contend that their water rights in Fred Burr Creek are being wrongfully diverted by Philipsburg entitling them to injunctive relief restraining Philipsburg from "acting in such a manner as to decrease the amount of flow during the irrigating season at the heads of the plaintiffs ditches below six hundred fifty inches (650") running in the channel of the said Fred Burr Creek." Based on evidence at the trial that there is only an annual average of 93 inches available from the dam area and above during the irrigating season, plaintiffs now concede they are entitled to protection only to this extent. On the other hand, Philipsburg's basic position is that the rights of the parties are controlled by the *Kelly* case and there is no evidence of interference with those rights by Philipsburg.

■ Although many contentions are advanced by the respective parties in support of and in opposition to various findings of fact by the trial court, no useful purpose would be served by a detailed analysis of such contentions herein. In our view, there is a single controlling fact that dictates the judgment herein. That fact is that Philipsburg is presently impounding surplus water in excess of the quantity it can use thereby depriving downstream users of their decreed water rights in Fred Burr Creek. This it cannot do.

Plaintiffs here have a downstream water right in the natural flow of Fred Burr Creek. Whatever rights Philipsburg may have to maintain dams and store and use waters, be they flood waters or the natural flow of Fred Burr Creek, it is entitled to no more water than its necessity requires or its distribution system will carry; it is the duty of Philipsburg to permit the excess to flow into the stream for the use of downstream appropriations. Whitcomb v. Helena Water Works, 151 Mont. 443, 444 P.2d 301. A provision in the district

court decree in *Kelly,* unmodified on remittitur, recognized this principle in the following language:

"It is further ORDERED, ADJUDGED AND DECREED that the plaintiff and each of the defendants herein to whom water has been allotted under this decree must turn the water back into said creek and into said lakes when the same is not being actually used by him or them for some useful or beneficial purpose."

Here, it is undisputed that Philipsburg is impounding water in excess of what it can presently use with its existing pipeline from Upper Fred Burr Lake to Philipsburg. The water superintendent for Philipsburg testified the use of water by the city from the reservoir at Upper Fred Burr Lake was limited by the capacity of the pipes carrying water from the lake to the city. He further testified the daily use of water by the city during the summer months was 800,000 gallons. Frank Stermitz, a hydraulic engineer called as an expert witness for plaintiffs, testified:

"Q. You would project the normal or natural flow of Fred Burr Creek at the base of the dam for future years to be approximately 93 miner's inches? A. Yes.

"Q. Now, Mr. Stermitz, from what you observed and from the studies you conducted, if that many miner's inches of water were released during that critical period and allowed to pass by the dam structure, would that have any effect on the water supply of the City of Philipsburg? A. It would lower the level of Fred Burr Lake; the quantity which would be needed to release the natural flow would result in a lowering of Fred Burr Lake of a little over two feet.

"Q. And it would have no other effect upon the lake? A. It would have no other effect upon the lake. May I amplify that?

"Q. Yes. A. That is based upon the study of evaporation and the capacity of the lake on the basis of area, the amount

of water which would be diverted for that purpose or released for that purpose, would be restored before the end of June in any year of flow."

Mr. Stermitz' testimony further revealed that the capacity of Upper Fred Burr Lake was approximately 400 million gallons, according to his estimate.

The foregoing evidence, which was uncontradicted, demonstrates that Philipsburg was impounding water far in excess of what it can use under its existing distribution system. Stermitz' testimony further indicates that at least part of this water is the natural flow of Fred Burr Creek. Under such circumstances Philipsburg must release the surplus water back into Fred Burr Creek for the use of decreed water right holders downstream. Whitcomb v. Helena W a t e r Works, supra. While no problems are presented during the runoff season in the spring when downstream users have sufficient water to satisfy their rights, there is insufficient water during the irrigating season to satisfy their decreed rights. If there is not 650 miner's inches of water at the head of plaintiffs' irrigation ditches during the irrigating season Philipsburg must release not to exceed 93 miner's inches from the surplus impounded natural flow of Fred Burr Creek.

Philipsburg argues that all water rights in Fred Burr Creek were reserved to its predecessors in interest by reservation in the 1903 deed mentioned in the opinion of this Court in *Kelly*. This contention is without merit. This Court in that opinion expressly declined to rule upon the effect of this reservation which plaintiffs therein contended was void. The deed was not introduced in evidence in the present controversy. Under such circumstances no issue as to the effect of this reservation was presented to the district court and its finding on this issue is ordered stricken.

Philipsburg also claims adverse user of the impounded waters for over 30 years cutting off any right of plaintiffs in the impounded natural flow above the dam that they other--

wise might have. The only witness, other than plaintiff Ben Gwynn, with any knowledge of the situation after the city acquired the dam and reservoir was William Smith who lived from 1926 up to 1957 on 268 acres of the 800 acres now owned by plaintiffs. Smith testified he purchased water from the city from its reservoir in dry seasons for irrigating hay lands and watering livestock. Plaintiff Ben Gwynn testified that from 1957 when he acquired his land up to 1965, at times when he needed additional water during the irrigating season he either asked the city to turn some water down the creek from its dam or he went up and turned it down himself. He further testified it was only after 1965 when there was a change in the mayor and city council that water was refused by the city. This evidence falls far short of establishing adverse user for the prescribed period sufficient to cut off all decreed water rights possessed by plaintiffs in Fred Burr Creek.

■ ■ The district court's finding herein that the decreed water right of 650 miner's inches to plaintiffs' predecessors in interest in *Kelly* was based on the volume of flow of Fred Burr Creek during the spring runoff is hereby ordered stricken. The district court judgment in *Kelly* as modified following appeal to and remittitur by this Court indicates otherwise. The modified judgment provides that defendant's predecessors are entitled to maintain and use the dam for storage purposes and are entitled to store the waters of Fred Burr Creek therein "provided [they] use the water in such a manner that every appropriator herein named, farther down the creek, shall have *during the irrigating season* of each year the use and enjoyment of said waters of said creek substantially according to its natural flow * * *". (Emphasis supplied.) This judgment and the findings on which it is based are res judicata and directly contrary to the finding of the district court in the instant case. The primary right to the use of water in a stream is that of the appropriator of the natural

flow, not the storage claimant. Whitcomb v. Helena Water Works, supra.

The other contentions of Philipsburg in no way alter the controlling facts and holding herein; no useful purpose would be served by discussing each of them.

The judgment of the district court is reversed. This cause is remanded to the district court for modification of the findings of fact and conclusions of law consistent with this opinion, together with entry of judgment in favor of plaintiffs granting an injunction in their favor against defendant enjoining it from interference with plaintiffs' decreed water rights in Fred Burr Creek and directing that in the event there is not sufficient water at the head of plaintiffs' ditches to insure 650 miner's inches of water during the irrigating season the defendant shall release not to exceed 93 miner's inches from the surplus impounded natural flow of Fred Burr Creek from its dams.

All parties in this cause to bear their own costs.

MR. CHIEF JUSTICE T. HARRISON and MR. JUSTICES JOHN C. HARRISON and HASWELL, concur.

MR. JUSTICE CASTLES (dissenting).

I dissent. In view of the stipulated facts, the nature of the action—an injunction, the previously adjudicated matters, and the testimony, the trial court had ample evidence to find as it did.