BRENNAN ET AL., APPELLANTS, *v.* JONES ET AL., RESPONDENTS.

(No. 7,485.)

(Submitted February 7, 1936. Decided February 21, 1936.)

[55 Pac. (2d) 697.]

552

Mr. *Elmer E. Hershey* and Mr. *Lew L. Callaway,* for Appellants, submitted a brief and argued the cause orally.

*Messrs. O'Hara, Madeen & Grant* and *Messrs. Murphy &
Whitlock,* for Respondents, submitted a brief; *Mr. R. A.
O'Hara* and *Mr. A. N. Whitlock* argued the cause orally.

556

MR. JUSTICE ANDERSON delivered the opinion of the court.

This was a proceeding brought pursuant to the provisions of section 7150, Revised Codes 1921, as amended by section 5 of Chapter 125 of the Laws of 1925, by certain dissatisfied water users of Skalkaho Creek, against Martin S. Jones, appointed water commissioner by the district court to distribute the waters of the creek under a decree entered on July 29, 1916, adjudicat-

ing the rights of the water users from this stream and the Ravalli Land & Irrigation Company, a corporation.

Skalkaho Creek rises in the Sapphire Mountains and runs in a generally western direction to the Bitter Root River into which it empties between Grantsdale and Hamilton. Settlers along this creek used water for irrigation, beginning with 1865. The stream runs in a narrow valley for several miles, then emerges from the hills and runs through the Bitter Root Valley to the river.

The complaint in this proceeding was filed by three water users. Brennan and Shuland were parties to the decree of 1916. Cash was the successor in interest of one Edwards, who was a party defendant. These complainants or their predecessors in interest were awarded certain rights under the decree. Many other rights were awarded under this decree which were prior in point of time to those of complainants.

In October, 1901, the Ravalli Land & Irrigation Company was incorporated for numerous purposes and objects, among others "to purchase, hold, develop, improve, lease, sell, or otherwise dispose of water and water powers and rights and the sites thereof." This corporation was the plaintiff in the water right action in which the decree was entered under which the defendant Jones was appointed water commissioner to distribute the waters of Skalkaho Creek. Prior to the commencement of that action this corporation acquired by purchase certain of the early water rights apart from the lands to which they had theretofore been appurtenant. The corporation, by means of a ditch known as the "High Line ditch," diverted the waters under these rights thus acquired, or some of them, out of the Skalkaho watershed into the watershed of Girds Creek, where these waters were disposed of by the corporation to various water users for irrigation purposes. Prior to the commencement of this suit, the corporation also acquired another ditch known as the "Ward ditch," which had theretofore been constructed, and certain appropriations made through that ditch by the original appropriators to irrigate lands within the Girds Creek

watershed. Likewise prior to the commencement of the water right action the same corporation constructed two ditches known as the "Republican" and "Hedge" ditches, which diverted waters from the Bitter Root River. The course of these two ditches is across Skalkaho Creek in the valley of the Bitter Root.

It appears from the record that prior to the commencement of the original water right suit, the corporation entered into an arrangement verbally whereby certain of the water users whose rights were based on appropriations out of Skalkaho Creek, and whose lands lay below the "Republican" and "Hedge" ditches, obtained from these two ditches an amount of water equal to their rights out of the Skalkaho, and in exchange the corporation diverted from the waters of the Skalkaho an amount of water equal to that delivered to the water users below the two company river ditches. The corporation also owns and uses two other small ditches which divert waters out of the Skalkaho watershed. All of the waters diverted for the use of the company from this watershed are used to irrigate lands within the Girds Creek watershed.

The lands of the plaintiffs are located high up in the valley of the Skalkaho where the valley is narrow, and the lands irrigated by them lie in close proximity to the creek bed. The lands of complainants Brennan and Shuland lie above the points of diversion of all of the corporation's ditches. The lands of Cash lie below the point of diversion of the High Line ditch, but above the points of diversion of the other company ditches. The corporation is not, and at no time was, the owner of any lands on which the waters diverted from this creek are used for irrigation.

In the decree in the original water right suit the corporation was awarded certain water rights as successor in interest to the original appropriators. The court in that decree found the date of each right, the lands for the irrigation of which it was appropriated, the character of the land and the necessity for irrigation, the amount of the appropriation and diversion "by means of a ditch of sufficient size." With the exception of certain appro-

560

priations made through the Ward ditch, no mention of any ditches by name or location is found in the findings or decree.

The court as to the plaintiff in that suit found that it was a corporation, created with powers mentioned supra, which were a public use, and that the plaintiff was engaged in carrying on and conducting such business. It further found in the decree that "the plaintiff, Ravalli Land & Irrigation company, by sundry mesne conveyances, executed and delivered to its predecessors in interest and from said predecessors in interest to it, became and is now the owner of each of the water rights enumerated as having been appropriated by its predecessors in interest as of the date of said appropriations separate from the land for which the same was appropriated, and is entitled to the use thereof, and to sell, lease or rent the same, or the use thereof, for irrigation and other useful and beneficial purposes, upon lands for which same was appropriated or upon any other lands, in the usual and ordinary course of its business." It also appears that prior to the entry of this decree, a predecessor in interest of the Montana Power Company had been diverting, through an iron pipe, from the waters of Skalkaho Creek some 65 inches which was used for supplying the citizens of Hamilton with water. The predecessor in interest of the latter company in this enterprise was a party defendant to the water right suit. However, no water right was awarded to that company. Subsequent to the entry of the decree a conveyance of 350 inches of water by the irrigation company was executed in favor of the Montana Power Company. No mention is made in the decree of this particular right or use of the water for the benefit of the citizens of Hamilton.

The water commissioner, in distributing the waters of the creek, distributed first to the irrigation company the amount of its prior rights, in accordance with the priorities of the decree, and also the amount of water adjudicated to various water users to whom the company was delivering an equal amount of river water from the "Republican" and "Hedges" ditches. During the irrigation season the water commissioner delivered continu-

ously the amounts of these prior rights, so that unless there was a sufficient volume of water in the creek to supply continuously all of the prior adjudicated rights, the complaining water users would receive no water. It appears that the manner of taking waters both by exchange and under the rights which the irrigation company owned, was handled in the same way both before and after the commencement and termination of the water right suit. Much of the testimony developing these various facts was admitted over objection.

The plaintiffs in the court below and here contended that the irrigation company was without right to change the place of use and point of diversion of the waters under the rights which it had acquired; that it was without right to exchange water, and the water commissioner without authority to permit the exchange of water; that the irrigation company was without right to receive a continuous flow of water under these rights during the irrigation season; that, if plaintiffs were permitted to irrigate their lands a major portion of the waters used on the lands would ultimately return to the creek through the processes of drainage and percolation, so that 90 per cent. of the water placed upon the lands would be available for other water users down the stream. The latter contention was controverted by conflicting evidence.

After the conclusion of the hearing, in which a large mass of testimony was received, the trial court approved the manner of distributing the waters followed by the commissioner, and found against all the contentions of the plaintiffs. The appeal is from this order.

In general, this proceeding was in effect tried on the theory of the plaintiffs that the decree only adjudicated the matters appearing upon its face, and that the portion of the finding quoted supra, permitting the irrigation company to use these waters upon other lands, if considered as an approval of the use of these waters outside the watershed, was invalid as being in violation of section 7095, Revised Codes 1921. The theory, in effect, upon which the defendants tried the proceeding was that

all of these matters of which plaintiffs make complaint were being practiced long before the commencement of the action and had been continued without material change since the entry of the decree. Since they could have been litigated in the original water right suit, the decree is conclusive on all these questions. As we view the situation, neither theory was entirely correct. No attempt was made on the hearing to offer in evidence the pleadings or any part of the judgment-roll in the water right suit, aside from the decree which included the findings of fact and conclusions of law. Nor was there any attempt in any manner to advise the court as to what issues were in fact there litigated.

We will first proceed to demonstrate the unsoundness of the theory of the defendants, which is based upon the statement found in many decisions to the effect that a judgment is final and conclusive, not only as to the matter actually determined, but as to every other matter which the parties might have litigated. Mr. Freeman, in his work on Judgments, fifth edition, page 1421, has written: "Courts have, from time to time, endeavored to lay down general rules, or, more properly speaking, general descriptions, by which to determine what questions are and what are not settled by a former adjudication. These general statements, divorced from the facts which called them forth, are not always accurate or harmonious and have sometimes led to results which an application of correct principles would not sustain. A statement often made is that 'an adjudication is final and conclusive not only as to the matter actually determined, but as to every other matter which the parties might have litigated and have had decided as incident to or essentially connected with the subject matter of the litigation, and every matter coming within the legitimate purview of the original action, both in respect to matters of claim and of defense.' Properly applied and within certain limits this statement is substantially accurate, but like all attempts to condense the doctrine of *res judicata* into a single sentence, it omits important qualifications." On page 1422 of the same

work, it is said: "What is really meant by this expression is, that a judgment is conclusive upon the issues made or tendered and, so far as those issues are concerned, of everything which might have been urged for or against them." These views are in accord with our own decisions. (*State ex rel. Sullivan* v. *School District No. 1*, 100 Mont. 468, 50 Pac. (2d) 252; *Swaim* v. *Redeen*, ante, p. 521, 55 Pac. (2d) 1.) The judgment was conclusive as to issues raised by the pleadings, issues actually litigated on the trial, and as to all things adjudged on the face of the judgment or necessarily determined in order to reach the conclusion there announced.

It is elementary that for the purpose of determining the operation and effect of a judgment, the entire judgment-roll may be examined. (*Wallace* v. *Goldberg*, 72 Mont. 234, 231 Pac. 56.) In 2 Freeman on Judgments, fifth edition, section 695, it is said: "The effect of every judgment or decree as an estoppel is ordinarily restricted to such matters as might have been litigated under the pleadings. * * * But as we have already seen, to render a matter *res judicata*, it is not essential that it should have been distinctly and specifically put in issue by the pleadings. It is sufficient that it be shown to have been tried and settled in the former suit. The issues made by the pleadings may be by the action or acquiescence of the parties broadened to include other matters. A judgment is conclusive as to issues made by the course of the litigation and within the subject matter of the action. Though a defense was not raised by formal written pleading if it was actually litigated and decided, the judgment is conclusive. Thus though matter in justification may not be admissible under the general issue, if it is in fact admitted and adjudicated it becomes *res judicata*."

The cases of *Thrasher* v. *Mannix & Wilson*, 95 Mont. 273, 26 Pac. (2d) 370, *Lokowich* v. *City of Helena*, 46 Mont. 575, 129 Pac. 1063, and *Zosel* v. *Kohrs*, 72 Mont. 564, 234 Pac. 1089, are not in conflict with our views herein expressed. In the first we said, where a water right had been adjudicated as of a certain date and it was attempted in a subsequent proceeding

to show that no water was used under it until a much later date than that contained in the original decree, we held the finding of the court as to the date in the former decree was conclusive as to the use of the water as of such date. Of necessity, the court in the former decree would not have found the date it did unless, as a preliminary to such finding, it found that the water had been used at a date at least as early as that found in its finding. In the other two cases the court in a former decree had expressly found certain facts which were conclusive in subsequent litigation.

The rule that a decree is conclusive only as to matters which were actually decided, but not as to matters which might have been decided, has been applied to water rights suits in other jurisdictions. (*Kidd* v. *Laird*, 15 Cal. 161, 162, 76 Am. Dec. 472; *Union Mill & Mining Co.* v. *Dangberg*, (C. C.) 81 Fed. 73; 3 Kinney on Irrigation, 2d ed., 2829.)

It is well to bear in mind in this connection the distinction ▮ between the effect of a judgment as an absolute bar to a cause of action, and as an estoppel as to particular facts relied on as evidence. The leading case defining this distinction is that of *Cromwell* v. *Sac County*, 94 U. S. 351, 24 L. Ed. 195, wherein it was said: ''There is a difference between the effect of a judgment as a bar or estoppel against the prosecution of a second action upon the same claim or demand, and its effect as an estoppel in another action between the same parties upon a different claim or cause of action. In the former case, the judgment, if rendered upon the merits, constitutes an absolute bar to a subsequent action. It is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. The language, therefore, which is often used, that a judgment estops not only as to every ground of recovery or defense actually presented in the action, but also as to every ground which might have been presented, is strictly accurate

when applied to the demand or claim in controversy. Such demand or claim, having passed into judgment, cannot again be brought into litigation between the parties in proceedings at law upon any ground whatever. But where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered. In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been litigated and determined. Only upon such matters is the judgment conclusive in another action.''

Proceeding now to the theory of the plaintiffs that the decree ██ ██ which authorized the defendants to change the place of use or point of diversion to the damage of complainant appropriators was invalid as being in violation of a positive statute, namely, section 7095, supra. While decisions on abstract questions of law do not operate as *res judicata* when considered apart from the particular subject-matter to which the law was applied, if they are followed, it is under the doctrine of *stare decisis;* ''but where the parties and the matter to be determined are identical, the former adjudication is *res judicata* and conclusive of the law as applied to that matter even though it is afterwards determined that the law was erroneously adjudicated and applied.'' (2 Freeman on Judgments, 5th ed., sec. 709.)

In the case of *Mitchell* v. *First National Bank,* 180 U. S. 471, 21 Sup. Ct. 418, 45 L. Ed. 627, it was written: ''It is said that the question here presented was one of general jurisprudence involving the rights of citizens of different states, and that the circuit court was not bound to accept the views of the state court but was at liberty, indeed under a duty, to follow its own independent judgment as to the legal rights of the parties. (*Burgess* v. *Seligman,* 107 U. S. 20, 2 Sup. Ct. 10, 27 L. Ed.

359.) If it were true that the question was in whole or in part one of general law, the thing adjudged by the state court when properly brought to the attention of the Circuit Court would still be conclusive between the same parties or their privies. Whatever may be the nature of a question presented for judicial determination—whether depending on federal, general or local law—if it be embraced by the issues made, its determination by a court having jurisdiction of the parties and of the subject-matter binds the parties and their privies so long as the judgment remains unmodified or unreversed." (*People ex rel. Attorney General* v. *Cassiday*, 50 Colo. 503, 117 Pac. 357.)

It has been held that where a state court has based its judgment on the unconstitutionality of a federal statute, a new action based upon the same cause of action cannot be maintained because the federal Supreme Court has subsequently, in another case, adjudged the law constitutional. (*People* v. *Russel*, 283 Ill. 520, 119 N. E. 617.) Nor is the effect of a judgment as *res judicata* lessened when the fact that it is erroneous is established by the decisions of the highest appellate tribunal of the state, rendered in another action. (2 Freeman on Judgments, 1540; *Frost* v. *Frost*, 21 S. C. 501; *Stevenson* v. *Edwards*, 98 Mo. 622, 12 S. W. 255; *Cain* v. *Union Central Life Ins. Co.*, 123 Ky. 59, 93 S. W. 622, 124 Am. St. Rep. 313.) This rule has been applied to water right suits. (*Hudson* v. *Ukiah Water & Imp. Co.*, 177 Cal. 498, 171 Pac. 93.) Thus it will be seen that the theory of the plaintiffs is unsound.

The primary questions for decision by the trial court were: (1) What was adjudged in the former proceeding? and (2) Was the water commissioner proceeding to distribute the water in accordance with what was there adjudged? In view of the fact that the pleadings in the former proceeding were not offered in evidence, and no attempt was made otherwise to advise the trial court as to what issues were actually litigated in that proceeding, the trial court was in no position to determine the first question, and neither is this court, and until that

question was decided, there was no foundation upon which to base a decision on the second. Hence the cause must be reversed for further proceedings in the trial court, but we deem it appropriate in addition to lay down such rules as will be helpful to the trial court in a further consideration of the cause.

We are committed to the rule that the appropriator of a water right does not own the water, but has the ownership in its use only. (*Creek* v. *Bozeman Water Works Co.*, 15 Mont. 121, 38 Pac. 459; *Allen* v. *Petrick*, 69 Mont. 373, 222 Pac. 451; *Verwolf* v. *Low Line Irr. Co.*, 70 Mont. 570, 227 Pac. 68; *Tucker* v. *Missoula Light & Ry. Co.*, 77 Mont. 91, 250 Pac. 11; *Maclay* v. *Missoula Irr. Dist.*, 90 Mont. 344, 3 Pac. (2d) 286; *Rock Creek Ditch & Flume Co.* v. *Miller*, 93 Mont. 248, 17 Pac. (2d) 1074, 89 A. L. R. 200.) Likewise it is settled by the decisions of this court that such a right is property which may be disposed of apart from the land on which it has been used. (*Smith* v. *Denniff*, 24 Mont. 20, 60 Pac. 398, 81 Am. St. Rep. 408, 50 L. R. A. 737; *Lensing* v. *Day & Hansen Security Co.*, 67 Mont. 382, 215 Pac. 999; *Maclay* v. *Missoula Irr. Dist.*, supra.)

After an appropriator has used the water sufficiently to answer the purposes of his appropriation, he may not take the water of the stream remaining which he cannot use for such purposes and sell it to other parties so that it will deprive subsequent appropriators of their right to use the same. (*Galiger* v. *McNulty*, 80 Mont. 339, 260 Pac. 401; *Tucker* v. *Missoula Light & Ry. Co.*, supra; *Creek* v. *Bozeman Water Works Co.*, supra.)

One who purchases a water right independent of the land to which it was theretofore appurtenant does not thereby enlarge or extend the right, and one who so purchases such a right is entitled to do only those things which the original owner of the water right might have done. (*Maclay* v. *Missoula Irr. Dist.*, supra; *Middle Creek Ditch Co.* v. *Henry*, 15 Mont. 558, 39 Pac. 1054; *Babcock* v. *Gregg*, 55 Mont. 317, 178 Pac. 284.)

A company such as the plaintiff in the original suit might make an appropriation of water for sale or rental which

would enable the company continuously to divert water from a stream to the full amount of its appropriation. (*Bailey* v. *Tintinger*, 45 Mont. 154, 122 Pac. 575.) The plaintiffs did not prove in this case whether the original appropriators, whose rights the defendant company had acquired, used the full amount of their appropriations continuously during the irrigation season, in dry summers.

As we understand the record, the defendant water commis-▋ sioner has been accustomed, after supplying the right of the Montana Power Company for supplying the town of Hamilton amounting to approximately 65 inches, to allow the irrigation company to receive the difference between the amount actually delivered and the 350 inches conveyed. If the Montana Power Company, being the owner of the right to use 350 inches of the water, fails to use the full amount of its appropriation, such excess or surplus not used must be returned to the stream for the use of subsequent appropriators, and the water commissioner is without authority to deliver this water except to appropriators in accordance with their priorities under the decree and their needs.

The solution of the other questions discussed and argued may depend on further proof.

The cause is remanded to the district court of Ravalli county, with directions to vacate and set aside the findings heretofore made, and to afford the parties to this proceeding an opportunity to offer further proof within a reasonable time and upon reasonable notice; and if further proof is received, to proceed to make further findings in accordance with the evidence and the views herein expressed. If the parties, however, fail to produce further proof within the time ordered by the trial court, then the court is directed to instruct the water commissioner with reference to the right serving the town of Hamilton in accordance with this opinion, and to find that the complainants have failed in other respects to establish that the water commissioner is not distributing the waters under the decree in ac-

cordance with its provisions. Each of the parties shall pay his costs on this appeal.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES MATTHEWS, STEWART and MORRIS concur.

Rehearing denied March 20, 1936.