STATE ex rel. McKNIGHT, Relatrix, *v.* DISTRICT COURT ET AL., Respondents.

(No. 8,191.)

(Submitted February 28, 1941. Decided March 12, 1941.)

[111 Pac. (2d) 292.]

*Mr. John Collins,* for Relatrix, submitted a brief, and argued the cause orally.

*Messrs. Gilbert & Gilbert,* for Respondents, submitted a brief; *Mr. W. G. Gilbert* argued the cause orally.

MR. CHIEF JUSTICE JOHNSON delivered the opinion of the court.

The relatrix has applied for a writ of review or other appropriate writ, to review a district court order giving instructions to a water commissioner. The order was made after a hearing

pursuant to an amended complaint filed by the West Side Canal Company, a corporation, under section 7150, Revised Codes. The question raised by the petition here is whether the district court exceeded its jurisdiction, and is therefore within certiorari.

The amended complaint, upon which the hearing was held, is entitled in three separate water right suits in the respondent court, numbered 576, 828 and 1053, the first of which adjudicated water rights on the head waters of Beaverhead or Red Rock River in Beaverhead county, including those of relatrix, and the other two of which adjudicated water rights further down the stream, including those of the plaintiff West Side Canal Company. It alleges that plaintiff is the full successor in interest to Beaverhead Canal Company, which in Causes Nos. 828 and 1053 was adjudicated the owner of 4,254 miner's inches of the waters of the river as of August 15, 1883, and that the defendant Gordon has been appointed to measure and distribute the waters of the river under the decrees in all three cases but has acted improperly in several respects, the only one in point in this proceeding being alleged as follows:

"That since his appointment as Water Commissioner as hereinbefore set out, the said Elmer Gordon has not distributed the waters flowing in the Red Rock and Beaverhead River according to law, but has at all times distributed the natural flow of said Red Rock and Beaverhead River to decreed rights under said Decree No. 576, which said rights are junior in point of time and right and are subordinate and inferior to the water right decreed to plaintiff's predecessors in interest; that each and every water right decreed in said cause No. 576 is later in time, inferior to, and subordinate to the water right decreed to the plaintiff in said cause No. 828 and in said cause No. 1053; that said water commissioner has not distributed said waters in Beaverhead and Red Rock River in accordance with the decrees hereinbefore set out, but has at all times refused so to do. That the said Gordon, as such water commissioner, distributes all of the natural flow of the Red Rock and Beaverhead River to the decreed rights in said cause No. 576, all of

which said rights are later in time and inferior to the decreed rights of the plaintiff, instead of permitting the natural flow of said Red Rock and Beaverhead River to flow down the river to the head of plaintiff's ditch so that the plaintiff's rights might be filled and satisfied.''

Neither relatrix nor her predecessor in interest was a party to either of causes Nos. 828 or 1053; neither plaintiff nor its predecessor in interest was a party to Cause No. 576; and the respective rights of relatrix and West Side Canal Company have never been adjudicated as against each other.

The judge of the court set the matter for hearing and ordered service of notice and complaint to be made upon the water commissioner, but did not order it to be made upon the water users. Relatrix was not notified and neither participated in nor was represented at the hearing. The judge of the local court was thereafter disqualified and the respondent district judge was called in to hear the matter.

For present purposes we need to refer only to the court's finding No. 8 and its orders Nos. 1 and 2, which are as follows:

''(8). That the water right awarded to the plaintiff's predecessor in interest by the decrees in said cause No. 828 and in said cause No. 1053 is prior in time and right to any water right decreed in said cause No. 576, and the plaintiff, so long as it has a beneficial use therefor, is entitled to receive its full right of 4254 inches before any water is distributed to any right decreed in said cause No. 576.''

''(1). That the Water Commissioner appointed under the decree in said cause No. 576 shall at all times hereafter and in all proper seasons, when the plaintiff has a beneficial use therefor and requires said waters for the purposes set forth in said decrees, cause and permit sufficient water to flow down the channel of the Beaverhead River to fill and satisfy the water right awarded to the plaintiff in said cause No. 828 and in said cause No. 1053, before distributing any of the natural flow of said Beaverhead River to any right decreed in said cause No. 576.

"(2). The decrees in said causes No. 576, 828 and 1053 are to be construed together and administered in conjunction with each other, and that the waters shall be distributed in accordance with the priorities and provisions of the several decrees."

Respondents' return raises no question of fact as to the matters above stated.

It cannot be seriously contended that the purpose of the ██ proceeding authorized by section 7150 is or can be to adjudicate water rights; its only purpose is to enforce the rights determined by prior decree. (*Quigley* v. *McIntosh*, 110 Mont. 495, 103 Pac. (2d) 1067.) Since the respective rights of relatrix and of the plaintiff have not been adjudicated as against each other, it is apparent that relatrix's rights cannot, in a summary proceeding of the nature in question, be subordinated to those of plaintiff. Obviously, the facts that in separate suits to which the other was not a party, the rights of relatrix and plaintiff were separately adjudicated and that plaintiff's right was established as of a date earlier than that of relatrix, cannot bind the latter without her day in court; therefore an attempt to subordinate her right to plaintiff's under the guise of instructions to a water commissioner under section 7150 cannot be sustained. To permit that result would clearly be to transgress against the constitutional requirement of due process, even if she had been given notice and an opportunity to appear in the summary proceeding, for her rights cannot be so informally adjudicated.

It seems no less apparent that even if her rights could be so informally adjudicated there would still have been an equally objectionable denial of due process in a hearing under section 7150 to which the relatrix was not made a party. That section does not and cannot provide that notice shall be given only to such interested parties as the judge may deem necessary to notify; it provides that he shall direct "that such notice be given to *the parties interested* in such hearing as the judge may deem necessary." The water commissioner himself has no interest in the water or in its distribution, except to carry out the court's instructions; he is a court officer for that sole pur-

pose, and is as disinterested as a stake-holder or one who brings interpleader. Obviously he is in no position to champion the rights of relatrix at the summary proceeding as against other water owners. Thus it is uniformly held that the owners of the water rights are necessary parties to an injunction action against the water commissioner in connection with his duties. (2 Wiel on Water Rights in the Western States (3d ed.), 1110, sec. 1196; *Squire* v. *Livezey,* 36 Colo. 302, 85 Pac. 181; *Terrace Irr. District* v. *Neff,* 92 Colo. 278, 19 Pac. (2d) 754; *Humboldt Land & Cattle Co.* v. *Allen,* 14 Fed. (2d) 650.) Obviously the water owners are the real parties interested, and notice must therefore be given them of proceedings affecting their rights. While that notice may be such "as the judge may deem necessary," it must still be such as to constitute due process, for the statute obviously may not abridge the constitutional right.

Respondents rely upon *Whitcomb* v. *Murphy,* 94 Mont. 562, 23 Pac. (2d) 980, as a precedent to the contrary. However, there two decrees had been entered adjudicating the water rights on the south fork of Sun River: the first, in Lewis and Clark county in 1890, adjudicating five water rights to plaintiff's predecessor in interest as of various dates from 1881 to 1886; the second, in Cascade county in 1911, again adjudicating those same five water rights and also an earlier water right to another predecessor in interest of plaintiff as of March, 1871, which was not before the Lewis and Clark county court in the first adjudication. That was the only difference between the decrees, so far as the record in *Whitcomb* v. *Murphy* discloses. In that proceeding the only parties were the plaintiff and the water commissioner, who had been appointed to distribute the water under both decrees, and who carried out the earlier decree before distributing any water to plaintiff under the still earlier right adjudicated to his predecessor in the Cascade county decree. The commissioner testified that other users below plaintiff on the stream had water rights later than the 1871 right adjudicated to plaintiff in the Cascade county decree but earlier than the rights adjudicated to him in the Lewis and Clark county suit. The record does not show, and no objection was

raised, that those intervening rights were not also again adjudicated in the Cascade county suit. Presumably they were, for the only suggestion in the record to the contrary is the commissioner's testimony that "*maybe* there is somebody not brought into that suit."

The later suit in Cascade county related to appropriations on the stream there as well as to those in Lewis and Clark county, and the chief objection raised by the commissioner in *Whitcomb* v. *Murphy* was that the trial court had no jurisdiction over the appropriations outside of Cascade county. That objection was properly overruled by the court.

In *Whitcomb* v. *Murphy,* no question was raised as to the propriety of a summary proceeding without notice to the water users. Whether this was because they were all parties to the Cascade county suit, so that plaintiff's 1871 right there decreed was binding upon them, or whether the water if used by him above them subsequently returned to the stream in time for their use, and so would not adversely affect them, does not appear.

But in the present case it is brought to this court's attention by a water user that her rights are being subordinated to a decree which is not binding upon her, by a summary proceeding to which she is not a party, and we have no other recourse than to hold that it cannot be done. It should be noted that by this proceeding relatrix seeks, not to subject to her adjudicated right, the water rights of the parties in the two later suits, but to defeat their attempt to subject her right to theirs. If the above order is permitted to stand, it does subject her right to theirs without a semblance of orderly adjudication or due process. It is true, as respondents contend, that the court must have power to enforce its decrees, but only as against those bound by the decrees. If the parties to causes 828 and 1053 had desired to conclude by their decrees the parties to the earlier suit, number 576, they could readily have done so at trivial expense; certainly no one acquainted with the elemental Anglo-Saxon requirement of due process and a fair opportunity to be heard could have expected to bind those

not made parties. Respondents suggest that time and expense will be consumed by litigation between those water users whose respective rights have not yet been adjudicated as against one another; but obviously that argument cannot abridge the constitutional right of due process.

The first dissenting opinion concedes, as must perforce be conceded, that a water right decree, like any other, is binding only upon the parties to the action and their successors in interest; the dissent adds ''and that it is not binding upon those who were not made parties unless they made their appropriations after the decree (section 7128, R.`C.).'' Since relatrix's appropriation was made before the decrees in Causes 828 and 1053, the sections mentioned in no event relate to her and the dissent does not seek to make them do so. But the reference is misleading for at least three reasons: First, section 7128 was not enacted until 1905; if, therefore, as assumed by the dissent, it were a provision of substantive law affecting water rights, it could not relate to rights acquired prior to its passage and approval, whether those rights were acquired before or after the decree in question. Second, section 7128 does not attempt to make decrees binding upon subsequent appropriators but merely makes them ''prima facie evidence of the facts therein found''; since evidence is not an adjudication but is merely the basis for an adjudication, it is clear that the legislature did not attempt to make decrees binding upon appropriators whose rights attached even after that enactment, but only made them prima facie evidence to be used and, if possible, rebutted in subsequent suits. Third: Section 7128 is applicable only to decrees in actions ''prosecuted in good faith'' and ''based upon evidence introduced and not upon stipulations or admissions of the parties''; and the record here is entirely silent whether the decrees in the two later suits conform to those requirements.

The first dissent then refers to section 7124.1 which provides that the claimant of a water right prior to decree but not a party to the suit ''may petition the court which entered such decree for an order making him a party to such decree and

establishing his right thereunder." The dissent proceeds to
say: "Until the remedy sought under section 7124.1 has
been pursued, I think the decree must be accepted as prima facie
correct and must be enforced by the court having jurisdiction."
In other words, the dissent holds that the legislature made the
remedy mandatory and imposed a penalty upon those not adopt-
ing it. It is unnecessary to consider whether the legislature
could have done so; for a reading of the section quickly proves
that no attempt has been made to do so. It provides only that
the water owner *may* (not *must*) seek the adjudication; and it
seeks to impose no reprisal upon the owner for failing to take
advantage of the permission granted him. Section 7124.1 thus
is inapplicable here.

*Farmers' Independent Ditch Co.* v. *Agricultural Ditch Co.*, 22
Colo. 513, 45 Pac. 444, 55 Am. St. Rep. 149, cited in the dis-
sent, is not possibly applicable here, as it is clearly shown by
the quotation therefrom that the Colorado Act "does not make
such decrees conclusive, but *prima facie evidence only* of right
of priority" and therefore that "the Act is not unconstitutional
as depriving the owners of their property without due process
of law." The Colorado Act in question provided for the ap-
pointment of a superintendent of irrigation in each of the
water divisions of the state to distribute the water "in ac-
cordance with the rights of priority of appropriation, as estab-
lished by judicial decrees," etc. The Colorado decision does
not apply to this case for several reasons, one of which is shown
by the portion quoted, to the effect that the Colorado Act makes
each decree *prima facie evidence only* as against those bound
by it. On the contrary, the respondents' contention here is that
relatrix is so absolutely bound by the decrees to which she is
a stranger that she is not even entitled to notice of the summary
hearing by which she is to be subjected to them. Obviously,
if they are only prima facie evidence against her, she is en-
titled to rebut that prima facie evidence, and thus is entitled
to due process and her day in court. It was precisely because
there was no effort to deprive her of due process that the
Colorado court held as it did, as subsequent decisions show,

especially *Fort Lyon Canal Co.* v. *Arkansas Valley Co.,* 39 Colo. 332, 90 Pac. 1023.

For several other reasons the decision relied upon in the dissent does not apply here. The proceeding in the Colorado case was not a summary one, such as section 7150 authorizes. It was an injunction suit to prevent the water superintendent from enforcing the rights otherwise than in chronological order; and the court merely held that as against a demurrer the complaint stated a cause of action so that the case could go to trial and the prima facie evidence, and evidence to rebut it, could be considered. Furthermore, the water users were made parties so that the adjudication of their respective rights could be had. Surely our associates do not consider that decision as a precedent for sustaining a final order making the decrees effective against relatrix without due process. Even if it went that far, we are unable to see how the Colorado decision in an injunction suit against the adverse owners and the water superintendent could possibly be construed to apply here in a summary proceeding against only the water commissioner, to which the owners are not parties at all. If, unlike the Colorado statute, section 7150 attempted to make the decrees absolutely binding upon strangers and not merely prima facie evidence against them, as respondents seek to have it do here, the proceeding would clearly be objectionable as taking their property without due process of law, as the Colorado decision shows. On the other hand, if, like the Colorado statute, section 7150 makes the decrees merely prima facie evidence against strangers (and we can find nothing in our statutes giving it even that effect, especially as to appropriations antedating it) how can it be enforced against the relatrix without even notice to her? If the statute makes the decrees only prima facie evidence, which is the most it can do, obviously the relatrix is entitled to due process and a chance to refute the prima facie evidence. Furthermore, she is entitled to that chance, not in a summary proceeding without adversary pleadings under the guise of instructing a water commissioner as to his duties, but in a real proceeding with the issues framed by the pleadings as in the

Colorado case relied upon in the dissent. Certainly that case can afford the respondents no comfort here.

For the reasons given above, the order made by the respondent court and judge on August 5, 1940, a portion of which has been quoted above, must be held null and void, so far as it subordinates relatrix's rights to those of others adjudicated in decrees which are not binding upon her. In accordance with Court Rule XVIII, paragraph 2, the costs of this proceeding are awarded to relatrix against the plaintiff West Side Canal Company, on whose behalf this proceeding has been defended in the name of the respondents.

Let a peremptory writ issue accordingly.

ASSOCIATE JUSTICES ERICKSON and ANDERSON concur.

MR. JUSTICE ANGSTMAN, Dissenting:

It is my opinion that the district court was correct in making the order complained of. I concede that a decree in a water right suit is *res adjudicata* only upon the parties to the action, and their successors, and that it is not binding upon those who were not made parties unless they make their appropriation after the decree. (Sec. 7128, Rev. Codes.) In such a situation, however, our statute provides a remedy for the person not made a party. This is found in section 7124.1, Revised Codes, which provides: "At any time after the entry of any decree, any person, not a party to such decree, who, prior to the entry of such decree, had or claimed a valid water right upon the stream or source or supply affected by such decree, or who subsequent to the entry of such decree had made a valid appropriation of water from said stream or source of water supply affected by such decree, may petition the court which entered such decree for an order making him a party to such decree and establishing his right thereunder, and in relation to the other rights affected by such decree. Upon filing such petition, such notice shall be given and procedure had as is provided in sections 7119, 7120, 7122, 7123, and 7124 of this Code."

Until the remedy sought under section 7124.1 has been pursued, I think the decrees must be accepted as prima facie correct and must be enforced by the court having jurisdiction. Otherwise there is no purpose in obtaining a water right decree. And where there are two or more decrees in the same water district, "they are to be treated as one for the purpose of distribution according to priority." (67 C. J. 1073.)

Here relatrix does not contend that the priorities provided for by the decree in question are not proper. Her main contention is that under the facts the use by her of the waters will not interfere with the use by those situated below on the stream, and particularly the West Side Canal Company, because the waters after being used by the relatrix return to the bed of the stream and flow down to where the canal company can use them. If this be the fact, the matter can be adjudicated under section 7124.1. It does not militate against the right of the court to order the water commissioner to distribute the water pursuant to the decrees until such time as the one or the other of the decrees is modified.

The rule properly applicable here was announced in the case of *Farmers' Independent Ditch Co.* v. *Agricultural Ditch Co.,* 22 Colo. 513, 45 Pac. 444, 55 Am. St. Rep. 149. The syllabus in that case accurately summarized the opinion of the court as follows: "The Irrigation Act of 1887, in requiring superintendents of irrigation to enforce the rights of the owners of ditches in accordance with their priorities of appropriation, as established by decrees of the courts in their respective districts, does not make such decrees conclusive, but prima facie evidence only, of right of priority as between ditches drawing water from a common source, but situated in different irrigation districts, the owners of which were not parties to the decrees entered in the other districts; and the Act is not unconstitutional as depriving the owners of their property without due process of law." While the statute considered in that case specifically provided that the decrees are not conclusive but prima facie only of right of priority, I think in essence that is the effect of our statute and that section 7124.1 provides

a method by which the prima facie showing may be overcome with the right of all parties concerned to be notified and have due process and a day in court.

If this is not the proper view to take, then I do not see how the water commissioner can function at all. He is stymied. If the rights of the canal company cannot be enforced because relatrix was not a party to the action in which its rights were determined, then how can the commissioner award any water to the relatrix since the canal company was not a party to the action in which her rights were adjudicated?

In the majority opinion it is stated: "It should be noted by this proceeding relatrix seeks, not to subject to her adjudicated right, the water rights of the parties in the two later suits, but to defeat their attempt to subject her right to theirs." This ingenious statement does not adequately present the picture. The practical question confronting the water commissioner is this: How shall he distribute the waters of the stream? He is not seeking, nor did the court authorize him to take water or subject the water right of one party to that of another. The fact is that either relatrix or the canal company is entitled to the first right as between themselves. By what process of reasoning may relatrix be given priority over the canal company? The canal company right is adjudicated to be prior in point of time to that of relatrix and the adjudication preceded that in which the right of relatrix was determined. The canal company right was adjudicated in 1894 and the right of relatrix was not adjudicated until in 1899. True, relatrix was not a party to the proceeding wherein the adjudication of the rights of the canal company was made, but neither was the canal company a party in the action in which the right of relatrix was determined. Her right was adjudicated to be later than that of the canal company and whatever right she has was also adjudicated without the canal company or its predecessor in interest being a party. On the record, then, however weak the position of the canal company may be as to its right of priority it is stronger than that of relatrix.

It is my view that the respective decrees involved herein establish prima facie the rights of the appropriator in each case, and that the court was right in ordering the water commissioner to enforce each of the decrees.

Contention is also made that relatrix was entitled to notice under section 7150 before the court could make the order in question. I concede that under section 7150, Revised Codes, the water user is the interested party and should ordinarily be entitled to notice. This is particularly true if there be a difference of opinion regarding the interpretation of the decree or decrees under which water is distributed. But here there is no difference of opinion as to the meaning of the several decrees. Each fixes the date as of which the right involved accrued. If they mean anything they mean that until modified or changed they fix the priority of the several rights, at least prima facie. The court has the continuing duty to enforce its decrees in water rights cases. (*Weiland* v. *Reorganized Catlin Con. Canal Co.,* 61 Colo. 125, 156 Pac. 596; *State ex rel. Swanson* v. *District Court,* 107 Mont. 203, 82 Pac. 779, 781.) Had the court done otherwise than order the commissioner to distribute the waters in accordance with the decrees, or had there been any question raised as to the proper interpretation of the decrees, then the water users were entitled to notice under section 7150. In the absence of any specific directions, it was the duty of the water commissioners to distribute the waters according to the decrees.

It does not appear to me to be necessary for the court to call in all the water users on a stream every time he instructs the commissioner with respect to his duties plainly provided for in the decrees. Of course, if the court attempted to order the distribution otherwise than as the decrees provide, a different rule would obtain. At any rate if the majority opinion correctly announces the law, then the order in question here would not be warranted even if notice were given to the water users. This conclusion, I think, is fundamentally wrong.

If the majority opinion is correct, then a water right decree has no more sanctity than a twentieth century international peace pact. It becomes nothing more than a scrap of paper.

It will not do to say that since the decree is good between the parties, it has at least some efficacy. That conclusion does not follow. Either relatrix or the canal company under the facts here has the first water right. The court records show that the canal company has the first right. If it has not, then how does relatrix happen to have it? If the district court was in error in making the order it did, it would be interesting to know what instructions the court should have given to the water commissioner.

I think the writ applied for should be denied.

MR. JUSTICE MORRIS:

I concur in a general way in the dissent of Mr. Justice Angstman but will express some views of my own. There is no question of due process involved in this controversy. When a water user applies to the district court to cite a water commissioner .to appear for correction in the manner he is distributing the water, it is a matter between the court and the commissioner. Neither summons nor notice to any others except such persons as the court may desire or the complainant proposes to have appear and testify is necessary. In the action about which the relatrix complains, neither her water right nor that of any other user was changed or altered in any manner. The court simply restated what former decrees had determined and from that basis directed the commissioner as to his duties. Notice to the relatrix would have accomplished nothing. No revision of the respective rights of the various users was proposed nor attempted.

If the relatrix had had notice she could have done nothing. She admits that the decree of August, 1883, gave to the plaintiff in this action 4,254 inches of the waters of the stream as a first right. That is all the plaintiff claims, but alleged in the complaint that the water commissioner was administering the waters in a manner unfair to it, and sought the aid of the court to compel the commissioner to do his duty fairly and in accord with the three decrees. After the hearing, all that the commissioner was admonished to do was in effect to take the

three decrees, determine by reference thereto the date a particular right was held to have been initiated, determine the amount awarded to the particular user, see that the weirs were properly installed and kept in repair, and admeasure and distribute the water according to priority of right.

The court's determination of the matter was in full accord with the provisions of section 7150, Revised Codes, and neither the relatrix nor any other user's right as fixed by the three decrees was changed or molested in any particular. The entire action about which the relatrix complains was not an act to change any former adjudication, but simply to enforce the decrees as made.