SALLIE A. ALLEN, ET AL., PLAINTIFFS, v. N. F. WAMPLER, ET AL., DEFENDANTS. PAUL B. HOFFMAN AND LESLIE BUSBY, COMPLAINANTS AND APPELLANTS, v. JOHN Q. NICH- OLS AND ELIZABETH NICHOLS, HUGH PELTZ AND UNA PELTZ, AND C. E. (SCOTT) MELIN, WATER COM- MISSIONER, RESPONDENTS, AND RESPONDENTS.

No. 10559.
Submitted January 15, 1964. Decided May 8, 1964.
392 P.2d 82.

Claude C. Gray (argued), Big Timber, Stanley P. Sorenson (argued), Helena, for appellants.

Jack D. Shanstrom (argued), Livingston, Ben E. Berg, Jr. (argued), Bozeman, for respondents.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

This is an appeal from a judgment entered in a proceeding instituted under section 89-1015, R.C.M.1947, which provides a summary remedy for a water right owner on an adjudicated stream, who is dissatisfied with the method of distribution employed by a water commissioner appointed to administer the decree by which the stream was adjudicated. Under the statute, the proceeding is initiated by the filing of a complaint to which no responsive pleading is contemplated. A hearing is held, upon notice to interested parties, and, if it appears that the commissioner is not properly administering the decree, the judge may give him appropriate instruction or may replace him.

In the instant case, the lower court rendered judgment adverse to the complainants, who brought the present appeal. The respondents below include the water commissioner whose method of distribution is called into question, but for clarity this opinion will refer to that official as the commissioner and to the other parties against whom complaint is made as the respondents.

The facts essential to frame the issues on this appeal are as follows. The respondents, collectively, are holders of two tracts of land near a stream in Park County called "Mill Creek." These tracts are not contiguous, one tract lying approximately two miles downstream from the other. In accord-

ance with the terminology used by the parties to this appeal, the upstream tract will be denominated the "Wiggins Land" and the downstream tract the "Darroch Land." Each of the two complainants own a tract of land, the two tracts being contiguous, situated in close proximity to the Wiggins land. The complainants' land is approximately the same distance upstream from the Darroch land as is the Wiggins land.

The water rights decree with which the present controversy is concerned was entered on June 1, 1938. The decree awarded to the respondents' predecessors in interest, for the irrigation of 140.66 acres of the Darroch land, 170 miner's inches as of June 30, 1880, and 25 miner's inches as of August 1, 1889. For the irrigation of 247 acres of the Wiggins land, the decree granted to predecessors of the respondents 272 miner's inches, as of June 1, 1903, of which right the respondents now own 165 miner's inches. The decree awarded to the complainants' predecessors a total of 283 miner's inches with priority dates ranging from 1883 to 1903. All of the awards in question were expressed only in terms of miner's inches, there being no limitation as to the time during which such amounts would be permitted to flow.

As contemplated by the decree, the complainants' water has, up to the present time, been conveyed to their land through the "Mill Creek Flat Ditch." With respect to the right to the use of that ditch, the complainants are, under the decree, tenants in common with surrounding landowners and each complainant owns an undivided 1/11th interest therein. Concerning the 247 inches awarded for irrigation of the Wiggins land, the decree specified that it was to flow through the "Upland Ditch," which runs roughly parallel to the Mill Creek Flat Ditch from the point of diversion on Mill Creek to the Wiggins land. The 165 inches of this right which the respondents now own is still transported through the Upland Ditch. With respect to the 195 inches awarded for the Darroch land, the decree specified that 170 inches thereof would be transported in

a ditch, located downstream from the ditches heretofore mentioned, known as the "Mill Race Ditch." Until 1959, the entire 195 inches was transported through that ditch. The decree also contains findings of fact respecting the capacity of certain ditches, included in which is a finding that the Mill Creek Flat Ditch had a capacity of approximately 2,200 miner's inches.

Beginning in 1959 the respondents changed the point of diversion of the 195 inches decreed for irrigation of the Darroch land and began to transport the same through the Mill Creek Flat Ditch to the Wiggins land for the purpose of irrigating the latter tract. This was done with the consent of the water commissioner, who had informally obtained the consent of some, but not all, co-owners of the Mill Creek Flat Ditch right. The respondents' use of water in this manner has continued until the present time and to such use he now has the consent of all co-owners of the ditch except the two complainants. In other words, this use of the ditch is with the consent of such co-owners of the ditch right as represent 9/11ths of the several undivided interests therein.

On the basis of the above facts, the complainants initiated the proceedings now before us on review, alleging that the commissioner's manner of distribution contravened the above-mentioned decree. In particular, the complainants alleged that the respondents' diversion of water through the Mill Creek Flat Ditch encroached upon their rights with respect to the ditch. The relief sought was a decree directing the water commissioner to remove the respondents' water from that ditch and enjoining the respondents from further utilizing the ditch. Following a hearing at which both complainants, one of the respondents, the water commissioner, and all but one co-owner of the usufruct rights on the Mill Creek Flat Ditch testified, the court entered findings of fact and conclusions of law adverse to the complainants. Insofar as is here material, the lower court concluded: (1) that the capacity of the Mill Creek Flat Ditch is 4,000 inches; (2) that the use by the respondents

of that ditch was permissive and did not constitute a trespass upon the complainants' rights to the ditch; and (3) that the respondents' diversion of water did not damage the complainants.

Section 89-1015, R.C.M.1947, provides:

"Any person owning or using any of the waters of such stream or ditch or extension of ditch, who is dissatisfied with the method of distribution of the waters of such stream or ditch by such water commissioner or water commissioners, and who claims to be entitled to more water than he is receiving, or is entitled to a right prior to that allowed him by such water commissioner or water commissioners, may file his written complaint, duly verified, setting forth the facts of such claim. Thereupon the judge shall fix a time for the hearing of such petition, and shall direct that such notice be given to the parties interested in such hearing as the judge may deem necessary. At the time fixed for such hearing, the judge must hear and examine the complainant and such other parties as may appear to support or resist such claim, and also examine such water commissioner or water commissioners and witnesses as to the charges contained in said complaint. Upon the determination of the hearing, the judge shall make such findings and order as he may deem just and proper in the premises. If it shall appear to the judge that the water commissioner or water commissioners have not properly distributed the water according to the provisions of the decree, then the judge shall give the proper instruction for such distribution. The judge may remove such water commissioner or water commissioners and appoint some other person or persons in his or their stead, if he deems that the interests of the parties in the waters mentioned in such decree will be best subserved thereby, and if it shall appear to the judge that the said water commissioner or water commissioners have wilfully failed to perform their duties, they may be proceeded against for contempt of court, as provided in contempt cases. The judge shall make such order

as to the payment of costs of such hearing as may appear to him to be just and proper."

In Gans & Klein Investment Co. v. Sanford, 91 Mont. 512, 519, 8 P.2d 808, 810, Mr. Chief Justice Callaway discusses this section in the following language:

"The only pleading required by section 7150 [Rev.Codes 1921, now R.C.M.1947, § 89-1015], as amended, supra, is the written complaint of a water user who is dissatisfied with the manner in which the commissioner is distributing the water. The method prescribed is a simple one: A person deeming himself injured by the actions of the commissioner lodges with the judge (or files with the clerk) a written complaint, upon which the judge fixes a time for hearing, directing that 'such notice be given to the parties interested in such hearing as the judge may deem necessary.' At the time fixed the judge hears and examines the complainant and such other parties as may appear to support or resist the claim, as well as the water commissioner and other witnesses as to the charges contained in the complaint. *The sole question for determination is whether the water commissioner has been distributing the water to the respective users in accordance with the decree.* It is possible that in time of low water the judge may be obliged to hear a number of complaints under this section of the statute during an irrigation season. The statute does not contemplate that a formal trial, framed upon pleadings filed by the respective parties, shall result from the mere filing of a complaint. Supposedly when a water right suit ends in a final decree, all of the issues contemplated therein are adjudicated. The decree is not merely a basis for a new procession of water suits. In the administration of the decree it may happen for one reason or another that the water commissioner may need directions from the judge respecting the distribution of the water; and it is readily perceived that this is more likely where there have been successive, and sometimes overlapping, decrees relating to the water rights.

492

"We do not commend the practice of permitting the filing of demurrers, motions, and answers in proceedings of this character. Unless a water user other than the complainant has cause for complaint because of the manner in which the water is being distributed, no reason appears for his filing and pleading. All he has to do is to present himself at the hearing to resist the demands of the complainant, if he thinks the relief asked for should not be granted." (Emphasis ours.)

Again in Quigley v. McIntosh, 110 Mont. 495, 499, 103 P.2d 1067, 1069, Mr. Chief Justice Johnson, speaking for this court stated:

"It has previously been held by this court that under sections 7150 [Rev.Codes 1921, now R.C.M.1947, § 89-1015] et seq., the whole question for determination in such a proceeding is whether the water commissioner has been distributing the water to the respective users in accordance with the decree or decrees. Gans & Klein Investment Co. v. Sanford et al., 91 Mont. 512, 8 P.2d 808. This logically tenders for consideration the question whether the judge properly instructed the water commissioner. The duties and authority of a water commissioner are prescribed by statute. He only has authority to distribute the water to the parties 'according to their rights as fixed by such decree or decrees.' Sec. 7136 [Rev.Codes 1921, now R.C.M.1947, § 89-1001]. The law does not give him complete and exclusive jurisdiction to control the stream as such (State ex rel. Reeder v. District Court, 100 Mont. 376, 47 P.2d 653); nor is it simply his duty to distribute certain quantities of water to the parties without reference to the purposes, uses and needs adjudicated in the decree.

"*It then becomes obvious that the decree must be the yardstick by which the commissioner shall proceed, and, of necessity, must likewise constitute the yardstick for the consideration of instructions given to him by the court. It is, therefore, necessary to look to the controlling provisions of the decree for the authority of both court and commissioner. Whether the face of the*

decree itself is necessarily the sole authority regardless of its form, is one of the questions to be decided here." (Emphasis ours.)

In Lamping v. Diehl, 126 Mont. 193, 200, 246 P.2d 230, 233, in referring to the water commissioner law, Mr. Chief Justice Adair stated:

"The present water commissioner law was enacted as Chapter 43, Laws of 1911, now R.C.M.1947, secs. 89-1001 to 89-1024. Section 89-1001 provides that a commissioner appointed by the court 'shall have authority to admeasure and distribute to the parties bound by the *decree or decrees* the waters to which they are entitled, according to their rights as fixed by such *decree or decrees*.' (Emphasis supplied.)"

The function of a proceeding under section 89-1015, supra, manifestly is merely to provide for allocation of water in accordance with an existing decree, and not to decree new water rights. State ex rel. McKnight v. District Court, 111 Mont. 520, 111 P.2d 292.

The respondents here introduced evidence of a change of place of use and that such change did not damage the complainants, and that the use of the Mill Creek Flat Ditch was with the consent of all co-owners except the complainants.

As to the change of place of use what was said in the Quigley case, supra, at 507-508 of 110 Mont., at 1073 of 103 P.2d, is applicable:

"In the first place, as stated above, it seems clear that the only reason for the appointment of a water commissioner is to distribute to the parties 'the waters to which they are entitled, according to their rights as fixed by such decree' (sec. 7136), and that the sole purpose of this proceeding is to determine whether the commissioner is properly discharging that duty (sec. 7150). Obviously, those purposes cannot be accomplished without determining what the parties' rights are under the decree in the light of the circumstances; and that is why notice must be given to all the interested parties.

494

"Admittedly there have been changes in the conditions since the entry of the decree; if not, the questions of the parties' rights under it would not now be before us. *Appellants contend that by reason of these changes, which they themselves have initiated, their rights cannot now be determined in this kind of proceeding under the original decree, but only under a new action resulting in a new decree. If so, any party by his own acts, like those of the appellants in the present instance, can oust the old decree and force the persons adversely affected to institute a new action and seek a new adjudication.* We have been able to find no authority for such contention, and can imagine none under our system of judicature and the principles relevant thereto.

"*If, on the other hand, the appellants should now contend that by reason of adverse user, prescription, abandonment or other change the old decree no longer governs, the burden would seem to be upon them to seek a new adjudication of their rights. In the absence of such new adjudication the decree must govern,* and the statutory procedure in aid thereof under section 7150 is the most practical and effective means yet devised by legislatures or courts of giving it full effect.

"The question is not what new rights the appellants have gained or what old rights the respondents have lost since the adjudication; if it were, the appellants must by proper action seek a new adjudication. The question rather is of the appellants' rights under the prior adjudication;—whether under it, without claiming new or additional rights, they are entitled to receive all the water which the commissioner has been giving them." (Emphasis ours.)

As to the claimed permissive use, respondents cite Rodda v. Best, 68 Mont. 205, 217 P. 669, as authority that a tenant in common of a ditch right may, without the agreement of his co-owner, consent to the use by a third person of all or a *part of his interest,* but that is not the situation here. None of the tenants in common have granted the respondents the right to use all or any part of their interest, they have merely con-

sented to respondents adding their water on top of the water of all co-owners which is carried in the ditch. This situation brings into focus the rights of the owner of the land through which the ditch runs. One cannot create an easement for a water right upon the land of another without first compensating the landowner.

We repeat here what this court said in Brennan v. Jones, 101 Mont. 550, 556, 55 P.2d 697, 701, "The primary questions for decision by the trial court were: (1) What was adjudged in the former proceeding? and (2) Was the water commissioner proceeding to distribute the water in accordance with what was there adjudged?" From the record here it is clear he was not, and the findings, conclusions and judgment of the district court cannot be approved since they go beyond the authority of the court in this type of proceeding. The cause is remanded to the district court with instructions to vacate its findings, conclusions and judgment, and to make and enter appropriate instructions to the water commissioner not inconsistent with what has been herein said.

It is so ordered.

MR. JUSTICES CASTLES, JOHN CONWAY HARRISON, ADAIR and DOYLE concur.