EDMUND WHITCOMB (HARRER and SCHATZ), PLAINTIFFS AND RESPONDENTS, v. THE HELENA WATER WORKS COMPANY (CITY OF HELENA), DEFENDANTS, INTERVENORS, CROSS-COMPLAINANTS AND APPELLANTS.

No. 11212.
Decided July 31, 1968.
444 P.2d 301.

444

Small & Cummins, Floyd O. Small (argued), Robert Cummins, Helena, for appellants.

Loble, Picotte & Loble, Henry Loble (argued), Helena, for respondents.

PER CURIAM:

This is an appeal from a judgment of the district court of Lewis and Clark County, the Honorable W. W. Lessley presiding.

This case bears the title of the original parties at the time of the adjudication made of Ten Mile Creek in the year 1903. The actual plaintiffs and respondents are W. J. Harrer & Sons, Inc., and Frank J. and Edna R. Schatz. The actual defendant and appellant is the City of Helena.

The proceeding involves the waters of Ten Mile Creek and its tributaries, and the decree adjudicating the waters therein made in 1903.

The water rights of the parties are as follows:
*Appellant and Defendant, City of Helena*
225 miner's inches, November 5, 1864 (1st decreed right).
325 miner's inches, February 10, 1865 (2nd decreed right).
*Respondent and Plaintiff, Frank J. Schatz*
120 miner's inches, March 29, 1865 (3rd decreed right).
80 miner's inches, May 31, 1867 (24th decreed right).
*Respondent and Plaintiff, W. J. Harrer & Sons*

175 miner's inches, March 31, 1865 (4th decreed right).

75 miner's inches, May 31, 1865 (13th decreed right).

75 miner's inches, April 30, 1870 (30th decreed right).

75 miner's inches, April 30, 1883 (43rd decreed right).

75 miner's inches, June 30, 1865 (Tributary right, Seven Mile Creek).

25 miner's inches, December 31, 1867 (Tributary right, Crystal Springs Creek).

Thus the City had the first right to 550 miner's inches. At the time, in 1903, the City diverted part of its water through a pipeline, the decree limited the City's right to the then present capacity of the pipeline.

Ten Mile Creek rises on the Continental Divide south and west of Helena. It flows due north until it reaches a City settling basin, and then turns and flows north and west to the Missouri River. The lands and diversion points on Ten Mile Creek of respondents Schatz and Harrer lie a number of miles below the settling basin of the City.

Originally, in 1903, the City diverted part of its water directly from Ten Mile Creek, near Walker Creek, a short distance above the settling basin. At that time the City did not store any water in substantial amounts.

Of the 550 inch right mentioned above, the City pipeline, according to the 1903 decree, carried 225 inches. Another diversion occurred three or four miles below the settling pond through the Yaw Yaw ditch. This ditch was abandoned in 1932.

In the year 1910 the City had two small pipelines from the settling pond to the places where they sold water. Later, these were replaced with a larger pipeline.

Some years after the 1903 decree the City developed a rather complex system of storage reservoirs, including Chessman and Scott reservoirs, and collection ditches. It also changed its point and method of diversion, putting in a large pipe to the settling basin and then to carry water to the City.

The respondent ranchers, junior right holders, in this action

complained that they were deprived of irrigation water for their crops. It is not necessary to describe the numerous details of a long record here. At the time of the commencement of the action the City actually only measured the water after it left the settling pond in its pipe to Helena. The City locked its headgates, ignored the water commissioner, and we think it fair to say, ran its water collection system as if junior rights had no rights at all. The City officials were actually held in contempt of district court orders.

This action was brought under section 89-1015, R.C.M.1947, which is a summary remedy for a water right owner on an adjudicated stream who is dissatisfied with the method of distribution employed. For cases decided in relation to this section, see: Brennan et al. v. Jones et al., 101 Mont. 550, 55 P.2d 697; Quigley et al. v. McIntosh et al., 110 Mont. 495, 103 P.2d 1067; State ex rel. McKnight v. District Court etc., 111 Mont. 520, 111 P.2d 292; and Allen v. Wampler, 143 Mont. 486, 392 P.2d 82.

We note here that the question to be decided by the district court was whether or not the water commissioner was distributing the water in accordance with the decree of 1903. Defenses of prescription, adverse user, abandonment, etc. are not involved.

Many contentions of the City in the district court are no longer involved. The 1903 findings upon which the decree was made, stated that 550 inches of water *were appropriated and decreed for purposes of sale to anyone who desired to purchase the same and without restriction as to use or locality of use.*

The decree also provided that one of the City's rights, that is the appropriation of November 5, 1864, of 225 inches, was *"only sufficient water to supply its present pipeline, at its present capacity."*

Ten Mile Creek, after a short period in the spring, becomes diminished to the point where there is not enough water to supply all rights. The City of Helena's collection and storage

system is designed to store surplus or flood waters. Some of the collection and distribution system is designed to prevent loss of water. Normally the reservoirs are filled to capacity in the spring. There is no complaint about this.

But what is complained about is what the City admits it does; the City *diverts water from various tributaries during the dry season to its reservoirs* to make up for the loss and evaporation and to keep a certain amount of water moving through the reservoir. Here is the heart of the case. The respondent ranchers complain that this interferes with their rights. In other words the City diverts water from Banner Creek and other tributaries through a seven mile long Red Mountain ditch into Chessman reservoir at a time when other decreed water users are being deprived of the full or even partial use of their decreed rights.

Thus the contention of the ranchers, upheld by the district court, is that the City can not *continue* to store water when other users are cut off. The City, on the other hand, contends that it can store some of its decreed water.

It follows, of course, that if the City's contention is right it could conceivably build an impoundment to store all its water and deprive all other users. This, of course, can not be; and the district court so held. The 1903 decree did not grant any storage rights.

Persons who construct and maintain reservoirs to impound waters of an adjudicated stream have the burden of showing that they do not interfere with the rights of prior appropriation of water from the stream. Donich et al v. Johnson et al., 77 Mont. 229, 241, 250 P. 963; Irion et al. v. Hyde, et al., 110 Mont. 570, 105 P.2d 666; Allendale Irrigation Co. v. State Water Conservation Board et al., 113 Mont. 436, 440, 127 P.2d 227.

In the Allendale case we said:

"It is well settled that the primary rights to the use of water in a stream are those of appropriators of *natural flow*

and that the burden is upon a subsequent storage claimant * * * affirmatively to disprove his interference with prior rights." (Emphasis added.)

In Tucker v. Missoula Light & Railway Co. et al., 77 Mont. 91, 101, 250 P. 11, 15, the defendant there made a contention similar to the one here. It said because it had decreed rights aggregating 2,676 inches, that up to that amount it could use the waters of the creek as it saw fit. This Court, in refuting that contention, said:

"The so-called 'ownership' of water differs from that of personal property capable of corporeal possession. Neither the appropriator of water nor one to whom a right is decreed owns the *corpus* of any part of the flow of the stream. He is entitled only to the beneficial use of the amount of water called for by his appropriation or decree when he has need therefor, and providing his distributing system has a sufficient capacity to carry such an amount of water. Creek v. Bozeman Water Works Co., 15 Mont. 121, 38 P. 459. When his ditches are incapable of carrying the amount of water decreed to him, his right is measured by the capacity of his system of distribution, regardless of his needs. Section 7094, Rev. Codes 1921; Norman v. Corbley, 32 Mont. 195, 79 P. 1059; Mettler v. Ames Realty Co., 61 Mont. 152, 201 P. 702; Jacobs v. City of Harlowton, 66 Mont. 312, 213 P. 244. So long as a party has all the water his necessity requires or that his ditches will carry, it is immaterial that he has a right, under decree or otherwise, to a greater flow from the creek. It is his duty to permit the excess to remain in the creek or, having diverted it to return it to the creek in such manner that it will be available to subsequent appropriators on decreed rights. Section 7097, above; Zosel v. Kohrs, 72 Mont. 564, 234 P. 1089; Huffine v. Miller, 74 Mont. 50, 237 P. 1103."

Interestingly the appellant City cites authority from Kinney on Irrigation and Water Rights, 2nd Ed., Vol. 2 (1912), as stating at page 1477:

"In general it may be said that the owner of a priority for direct irrigation is entitled to use his discretion as to whether he shall store the water up in reservoirs for future use or use it immediately."

But the same authority, citing other Colorado cases, goes on to say:

"But, on the other hand, if the rights of other appropriators upon the stream are materially injured, no change can be made from direct irrigation to storage  *  *  *."

Again, appellant City cites 30 Am.Jur., Irrigation, § 41, page 878, for the same rule stated by Kinney, but that authority emphasizes the limitation stated by Kinney, that the right to storage depends upon "*  *  * so long as existing rights are uninjured."

After examining all of the authorities cited, we think the rule allowing storage is dependent upon the lack of interference with other rights.

While the appellant's brief complains of many other matters, appellant admits the sole issue is as discussed above; therefore we shall not drift into numerous cul-de-sacs of discussion.

We observe that the district court's orders and instructions to the water commissioner result in a distribution of water equitable to as many right holders as possible and we affirm the judgment.